## HENDERSON v. THE STATE.

No. 17830. ARGUED APRIL 14, 1952—DECIDED JUNE 9, 1952— REHEARING DENIED JULY 15, 1952.

*Daniel Duke,* for plaintiff in error.

*Eugene Cook, Attorney-General, R. L. Addleton, Assistant Attorney-General, Boykin & Boykin, Shirley Boykin, John J. Flynt, Solicitor-General,* and *Wright Lipford, Solicitor-General,* contra.

WYATT, Justice. ■ When this case was first here, it was held that the fact that the jury was "authorized to find that, on the night of the killing, the defendant owned the pistol from which the bullets were fired that killed the deceased," was not sufficient to authorize a conviction. In that case, Justice Almand, writing for the court, points out very clearly why the evidence adduced upon the trial was not legally sufficient to sustain the verdict of guilty.

In the instant case, the evidence was substantially the same as in that case, with the additional circumstance that the defendant had at one time lived in the locality where the crime was committed and was familiar with the territory. This additional fact, without more, would, of course, not be sufficient to sustain the verdict.

In the instant case, the lady witness, whom the defendant was alleged to have attempted to attack at the time of the killing, testified: "I see Clarence Henderson in this court room. I heard the man talking. I heard all that he said out there that night. I have heard Clarence Henderson talk since he was apprehended. I heard him talk in Newnan, Georgia, one Sunday in Sheriff Potts' office. In my opinion, based upon my observation of the man that night that I have testified to, and having heard him talk over in Sheriff Potts' office, the man was Clarence Henderson. Clarence Henderson did that." It appeared that the witness did not know the defendant before the night of the alleged crime, and that she therefore at that time did not know his voice. It also appeared that, at the first trial, "the only evidence in the record as to a description of the person who did the killing is that of the lady witness, who testified that

he was a Negro, and she, who heard his voice and saw him, made no attempt to say that he resembled the defendant in any manner." *Henderson* v. *State*, 207 *Ga.* 206, 215 (60 S. E. 2d, 345).

Boiling this testimony down to what it really means, it simply means that the witness gave it as her opinion, based upon the voice and size of the defendant, that he was the man who perpetrated the crime; notwithstanding the fact that she did not know him or his voice at the time of the crime, and the further very significant fact that at the first trial she made no effort to identify the defendant or to testify that he "resembled the defendant in any manner." "The averment that on the day after the signing of the note by the plaintiff in error 'he called the bank by telephone' and communicated the conditions to one whose voice 'he took to be' that of the assistant cashier was fatally defective as a plea of knowledge in the bank. It is not a sufficiently positive allegation of a necessary fact." *Thompson* v. *Bank of Chatsworth*, 30 *Ga. App.* 443, 445 (118 S. E. 470).

It is true that "personal identity of accused may be established by the testimony of a witness that he was familiar with his voice and recognized it." 41 C. J. S. 37, § 320. See also cases there cited. In the instant case we do not have a witness who was "familiar with his voice and recognized it." The witness was not familiar with the voice of the accused. So much so that she made no effort to identify him on the first trial, and in the instant case simply gave it as her opinion, having heard him talk since that time, that it was the same voice. An entirely different situation would be presented had she testified that she was at the time of the crime familiar with his voice and recognized it. For a collection of cases on the question of the recognition of voice in telephone conversations, see annotation at bottom of page 5 in 71 A. L. R.

As was pointed out by Justice Almand in *Henderson* v. *State,* 207 *Ga.* 206, the identity of the person accused was stronger in *Patton* v. *State,* 117 *Ga.* 230 (43 S. E. 533), than in the instant case. Taking into full consideration the additional testimony adduced on the trial of this case now under consideration, the case is still controlled by *Patton* v. *State,* supra. The evidence as to identity simply does not measure up to the rule required by law; particularly so where the conviction is otherwise, as in the instant case, dependent entirely upon circumstantial evidence.

■ The special grounds of the motion for new trial as to matters which might occur at another trial, do not within themselves, some of which have some merit, require a reversal.

From what has been said above, it follows, the judgment complained of was error.

*Judgment reversed. All the Justices concur except Duckworth, C.J., and Candler, J., who dissent; Atkinson, P.J., not participating.*

### ON MOTION FOR REHEARING.

WYATT, Justice. I am still of the opinion that the State can not file a motion for rehearing in a criminal case, as pointed out in the dissent of Mr. Justice Head in *Glustrom* v. *State*, 206 *Ga.* 734 (58 S. E. 2d, 534), and, for that reason, this motion for rehearing should be dismissed. Since, however, a majority of the court has the contrary view, the motion for rehearing can not be dismissed. Since, however, it appears that there is no merit in the motion for rehearing, the same is denied. I am authorized to say that Mr. Justice Almand and Mr. Justice Head concur in the opinion that the State can not file a motion for rehearing in a criminal case.