## 55692. MURPHY v. THE STATE.

McMURRAY, Judge.

Defendant Murphy and one Lacy were indicted for multiple offenses of burglary and aggravated assault. The cases were separated for trial, and we are concerned here only with defendant Murphy.

At trial, the state's evidence was that in the early morning hours of December 5, 1976, Gandy, a police officer with the City of LaFayette, Walker County, Georgia, was patrolling the city, when at approximately 3:18 a.m. he noticed a black over red 1968 Ford automobile suspiciously parked in front of Hammond

Jones Hardware Store on North Main Street. Having decided to investigate Gandy checked by radio with a part-time police officer who worked as a door checker to determine if the car had been in that location earlier. Gandy was advised that the automobile had not been there one-half hour earlier. Gandy returned to the hardware store as the Ford was leaving. The Ford headed north on Highway 27 and Gandy followed, informing his dispatcher of his action and of the description of the car, along with its tag number. Two minutes later Gandy was informed by the dispatcher that the silent alarm at Hammond Jones Hardware Store had gone off. Gandy contacted another patrol unit being operated by Sgt. Richardson and Officer Bates and informed them of his location and that he was going to attempt to stop the Ford. Gandy turned on his blue lights and siren, but the Ford occupied by two unidentified suspects increased speed and continued north on Highway 27. Gandy pursued the vehicle and the other patrol unit operated by Richardson and Bates joined in the chase. The patrol car occupied by Richardson and Bates was faster than Gandy's and they soon passed Gandy as the pursuit continued at speeds in excess of 100 mph. The Ford automobile being pursued "bootlegged" (to spin around) and started back south on Highway 27. The pursuit continued and Richardson instructed Bates to fire warning shots into the air, which he did. The passenger in the pursued vehicle fired back, some fifty to sixty times in all, and after some exchange of gunfire, Richardson, the driver of the car which he and Bates occupied, was shot in the chest. Richardson and Bates brought their patrol car safely to a halt despite Richardson's wound, but they were out of the chase.

Price, a Dade County deputy sheriff, was informed of the chase by radio and instructed to establish surveillance of the intersection of Highway 143 and Highway 157 near Trenton, Georgia. While parked on the side of the road at this location the Ford drove past. Price immediately turned on his blue lights and followed the Ford in order to stop it, but the Ford accelerated, and another high speed pursuit in excess of 100 mph ensued. The driver of the Ford lost control and wrecked. Price went over to the car and arrested Lacy, who was sitting behind the steering

wheel. At that time, there was no other occupant in the Ford.

Other law enforcement officers arrived on the scene including Brown of the Walker County Sheriff's Department, who took possession of the contents of the car, an assortment of approximately thirty firearms, including hand guns, shotguns and a rifle, and proceeded to LaFayette with Lacy in his custody.

Hopkins was another Walker County deputy who was dispatched to the scene of the wreck. He testified that when he arrived several other officers were there conversing at the scene of the wreck when Murphy walked up to them and informed the officers: "Well, there is no need for the bloodhounds. . . I'm the other man you're looking for." Murphy was placed under arrest and transported to the Walker County jail where he was questioned by investigators Haskitt and Visage of the Walker County Sheriff's Department. In the course of interrogation Murphy admitted being in the automobile during the chase, and that prior to the chase he had participated in breaking into a hardware store in LaFayette.

A crime laboratory expert testified that defendant's fingerprints had been found on a .22 caliber pistol taken from the black over red Ford and that his fingerprints had been found on the outside right front vent window and left fender of the car. Another crime laboratory expert testified that the bullet which had wounded Richardson was fired by one of the hand guns found in the Ford.

The court charged the jury on one burglary count and two counts of aggravated assault. The jury returned a verdict of guilty as to all three of these offenses. Defendant appeals. *Held:*

1. The statement by defendant to Hopkins and the other officers within hearing distance that he was the other man they were looking for falls under the admission against interest exception to the hearsay rule and was properly admitted. Defendant's contention that the admission was improperly admitted because not a part of the res gestae is not meritorious. *Graham v. State*. 125 Ga. 48 (1) (53 SE 816).

2. A Jackson v. Denno (378 U. S. 368 (84 SC 1774,

12 LE2d 908)) hearing was held outside the presence of the jury to determine the voluntariness of defendant's statements to law enforcement officers after he was taken into custody. Defendant's Enumerations 2, 3 and 7 contend the refusal of the trial court to consider the evidence of alleged physical abuse of Murphy, occurring subsequent to his statements, was error. Although this court abhors any physical abuse of prisoners as alleged by the proffered evidence, we must note that the alleged incident of alleged physical abuse purportedly occurred some two months after defendant's statements, the voluntariness of which were the subject of consideration at the Jackson v. Denno hearing. We can find no manner in which such subsequent physical abuse might be relevant to the issue before the court on the Jackson v. Denno hearing. An irrelevant or immaterial line of inquiry may be curtailed. *Decker v. State,* 139 Ga. App. 707, 708 (2) (229 SE2d 520).

3. Defendant's 4th, 5th and 6th enumerations of error complain of error in the admission into evidence of the oral statements Murphy made to law enforcement officers during their questioning of him, and the admission into evidence of a waiver of rights form signed by defendant before the questioning. There was evidence at the Jackson v. Denno hearing that defendant was fully advised of his constitutional rights before any questions were asked of him, as required by Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), and that no physical threats, acts of violence or promises of reward were used to induce Murphy to make his statements to law enforcement officers. There is conflicting evidence, but on a Jackson v. Denno hearing the trial court is the trier of fact and there was evidence sufficient to support the trial judge's conclusion that Murphy's statements were made with knowledge of his constitutional rights, freely and voluntarily without fear of personal injury or promise of reward. *Howard v. State,* 141 Ga. App. 238 (1) (233 SE2d 58); *Johnson v. State,* 233 Ga. 58 (209 SE2d 629); Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618).

Prior to interrogation defendant was asked to read and sign a form which stated his rights as enunciated in

Miranda v. Arizona, supra. The state's evidence was that defendant read the form and then voluntarily signed it. There was no error in admitting this form into evidence. See *Pless v. State,* 231 Ga. 228 (3) (200 SE2d 897); *House v. State,* 232 Ga. 140, 143 (1) (205 SE2d 217).

4. At the close of the state's evidence defendant moved for a directed verdict as to the offense of burglary. The trial court did not err in denying defendant's motion if there was evidence that defendant traveled to LaFayette with the intent of committing burglary, was an occupant of a vehicle suspiciously parked outside Hammond Jones Hardware Store in the early morning hours, which vehicle fled from the police, and sufficient glass was broken from the door of Hammond Jones Hardware Store to permit the entry of a person and the burglar alarm was activated. While in custody, defendant told law enforcement officers that he had broken into a hardware store and had fled when he and Lacy had seen the police pass by. This is sufficient evidence from which the jury might conclude that there was an entry of Hammond Jones Hardware Store with the intent to commit a theft. *Price v. State,* 138 Ga. App. 558 (226 SE2d 799); *Pryor v. State,* 139 Ga. App. 814 (229 SE2d 670); *Mayfield v. State,* 141 Ga. App. 483 (233 SE2d 833).

5. Code § 26-1302 provides a maximum sentence of 10 years for the offense of aggravated assault. As amended by Georgia Laws 1976, page 543, provision is made for maximum sentence of 20 years where "[a] person who knowingly commits aggravated assault upon a peace officer while such peace officer is engaged in or on account of the performance of his official duties. . ." The defendant enumerates as error the sentence of 20 years imposed upon him for the offense of aggravated assault upon the person of Richardson, contending that this sentence was illegal. Defendant argues that the legislative intent was that Georgia Laws 1976, page 543, create a specific and separate crime of aggravated assault upon a peace officer, that this separate and specific crime is not the crime charged by the indictment as it does not specify that Richardson is a peace officer.

Defendant relies in part upon the language in the caption of Georgia Laws 1976, p. 543, which identifies

this Act as "An Act to amend Code Chapter 26-13, relating to the crimes of bodily injury and related offenses, so as to define the crime of aggravated assault upon a police officer. . ." But, reading the remainder of the caption of this Act we find that the legislature sought "to provide additional penalties for the crimes of aggravated assault and aggravated battery committed against law enforcement officers." Considering this further language in the caption of the Act the language of the change made in Code § 26-1302, and the fact that no separate crime was delineated by being placed in a separate paragraph, we find that the legislative intent shown by the amendment was to provide for a greater punishment for the offense of aggravated assault when that crime is knowingly perpetrated against a peace officer engaged in or on account of the performance of his official duties.

Although Richardson is not identified in the indictment as a peace officer, such was not required to satisfy the requirements of *DePalma v. State,* 225 Ga. 465, 469 (3) (169 SE2d 801), that the accused be definitely informed as to the charges against him so that he may be enabled to present his defense and not taken by surprise by the evidence offered at the trial; and that defendant be protected against another prosecution for the same offense. This enumeration of error is without merit.

6. Defendant enumerates as error the refusal of the trial court to instruct the jury according to two of his requests to charge. The two requests to charge in question were unsupported by any evidence presented at trial. There is no error in refusing to give a charge which is not adjusted to the facts of the case. *Lewis v. State,* 196 Ga. 755, 760 (3) (27 SE2d 659); *Bassett v. State,* 119 Ga. App. 639 (2) (168 SE2d 343).

7. Defendant's 11th enumeration of error raises an issue as to the sufficiency of the evidence. This court is bound by the "any evidence" rule and must, on appeals from verdicts of guilty, construe the evidence to uphold the verdict and resolve conflicts against the defendant. *Cohran v. State,* 141 Ga. App. 4 (1) (232 SE2d 355); *Franklin v. State,* 136 Ga. App. 47, 48 (1) (220 SE2d 60). The evidence presented by the state was sufficient under the "any evidence" rule to authorize the jury to return the

verdicts of guilty.

*Judgment affirmed. Quillian, P. J., and Webb, J., concur.*

SUBMITTED APRIL 6, 1978 — DECIDED JUNE 27, 1978 — REHEARING DENIED JULY 14, 1978 — 

*James A. Secord,* for appellant.

*William M. Campbell, District Attorney, Craig Gillen, Assistant District Attorney,* for appellee.